UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

COLIN J. HALEY, A37-139-710,

                    Petitioner,

          -v-                                          12-CV-1148-JTC

ERIC H. HOLDER, Attorney General
of the United States;

MICHAEL PHILIPS, Field Office Director
for Detention and Removal, Buffalo Field
Office, Bureau of Immigration and Customs
Enforcement;

Department of Homeland Security; and

TODD TRYON, Facility Director, Buffalo
Federal Detention Facility,

                    Respondents.

_____


## INTRODUCTION

          Petitioner Colin J. Haley, an alien under a final order of removal from the United

States, has filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C.

§ 2241 seeking release from detention in the custody of the United States Department of

Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), pending the

execution of a final immigration order of removal issued against him.  Item 1.  As directed

by this court's order entered December 4, 2012 (Item 2), respondent[1] has submitted an

_____

[1]The only proper respondent in this proceeding is Todd Tryon, Assistant Field Office Director,
Immigration and Customs Enforcement, Buffalo, New York Office, and Director of the Buffalo Federal
Detention Facility, as he is "the person who has custody over [the petitioner]."  28 U.S.C. § 2242; *see also*
§ 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person
detained."); *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004).

answer and return (Item 6), along with an accompanying memorandum of law (Item 7), in opposition to the petition.

For the reasons that follow, the petition is denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner, a native and citizen of Guyana, was admitted to the United States at New York City on or about June 22, 1983, as a "P-22" immigrant (unmarried son of a lawful permanent resident). *See* Item 6-1 (Declaration of DHS Deportation Officer Juanita Payan), ¶ 5; Item 6-2 (Exh. A attached to Payan Decl.), pp. 8, 17.

DHS records reflect that petitioner was convicted of the following criminal offenses while present in the United States:

a. On or about August 26, 1987, petitioner was convicted in New York State Supreme Court, New York County, of Attempted Burglary in the 2nd Degree: Illegal Entry with Criminal Intent. He was sentenced to 5 years probation.

b. On or about September 29, 1988, petitioner was convicted in Albany, New York, City Court of Assault in the 3rd Degree. He was sentenced to a term of incarceration of 1 year.

c. On or about September 11, 1990, petitioner was convicted in Albany City Court of Menacing. He was sentenced to time served.

d. On or about June 8, 1992, petitioner was convicted in Albany City Court of Driving While Intoxicated/Impaired by the Consumption of Alcohol. He was sentenced to 90 days incarceration.

e. On or about March 29, 1993, petitioner was convicted in Town Court in Colonie, New York, of Petit Larceny. He was sentenced to 90 days incarceration.

f. On or about June 23, 1993, petitioner was convicted in Village Court, Menands, New York, of Petit Larceny. He was sentenced to 15 days incarceration.

g.	On or about September 16, 1993, petitioner was convicted in Albany Town Court of Petit Larceny.  He was sentenced to 226 days incarceration.

h.	On or about October 26, 1995, petitioner was convicted in Troy, New York, City Court of Assault in the 3rd  Degree: With Intent to Cause Physical Injury. He was sentenced to time served and granted a conditional discharge.

i.	On or about October 29, 1997, petitioner was convicted in Troy City Court of Petit Larceny.  He was sentenced to 6 months incarceration.

j.	On or about November 13, 1998, petitioner was convicted in Albany County Court of Driving While Intoxicated and Aggravated Unlicensed Operation of a Motor Vehicle in the 1st Degree.  He was sentenced to 1 year incarceration.

k.	On or about January 11, 1999, petitioner was convicted in Troy City Court of Assault in the 3rd Degree: With Intent to Cause Physical Injury.  He was sentenced to 6 months incarceration.

l.	On or about February 7, 2000, petitioner was convicted in Albany County Court of Driving While Intoxicated: Previous Conviction Designated Offense Within 10 Years and Aggravated Unlicensed Operation of a Motor Vehicle in the 1st Degree.  He was sentenced to 9 months incarceration and fined $1,000.

m.	On or about December 18, 2002, petitioner was convicted in Rensselaer, New York,  County Court of Driving While Intoxicated: Two Previous Convictions of Designated Offense within 10 Years and Aggravated Unlicensed Operation of a Motor Vehicle in the 1st Degree.  He was sentenced to 1 year incarceration and fined $500.

n.	On or about February 18, 2009, petitioner was convicted in Troy City Court of Attempted Assault in the 3rd  Degree: With Intent to Cause Physical Injury.  He was granted a conditional discharge.

o.	On or about August 4, 2010, petitioner was convicted in Schenectady, New York, County Court of Driving While Intoxicated.  He was sentenced to 360 days incarceration and fined $500.

Item 6-2, pp. 8-9.

Following his conviction and sentence on August 4, 2010, petitioner was sent to

Schenectady County Jail where he was encountered that same day by ICE officers and

taken into DHS custody. *Id.* at 9-10. He was served with a Notice to Appear ("NTA"), dated August 4, 2010, charging him with being removable from the United States pursuant to INA § 237(a)(2)(A)(ii), as an alien who has been convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct. *Id.* at 15. Petitioner was served with Additional Charges of Inadmissibility/Deportability on October 6, 2010, and May 25, 2011, which added factual allegations to the NTA regarding petitioner's criminal convictions. *Id.* at 18, 20.

On August 19, 2011, an immigration judge ("IJ") denied petitioner's requests for relief from removal, and ordered petitioner removed from the United States to Guyana. *Id.* at 10. Petitioner appealed the IJ's decision to Board of Immigration Appeals ("BIA"), and the IJ's order of removal became final on December 9, 2011, when the BIA dismissed petitioner's appeal. *Id.* at 22. On December 28, 2011, petitioner filed a petition in the United States Court of Appeals for the Second Circuit, seeking review of the BIA's December 9, 2011 order. *See id.* at 29-31 (Docket Sheet, *Haley v. Holder*, Dkt No. 11-5395 (2d Cir.)).

Meanwhile, on December 16, 2011, DHS sent a presentation packet to the Embassy of Guyana (the "Embassy") in Washington, D.C., requesting that a travel document be issued for petitioner's removal. Item 6-1, ¶ 16. According to DHS records, on January 13, 2012, an Embassy representative notified DHS that the Embassy will not issue a travel document for petitioner while his petition for review remains pending in federal court.

On January 12, 2012, DHS served petitioner with a Form I-229(a), Warning for Failure to Depart, along with an instruction sheet listing actions that petitioner was required

to complete within 30 days to assist in obtaining a travel document for his removal from the United States. Item 6-2, pp. 13-14. The warning form advised petitioner, among other things, of penalties under INA § 243 for conniving or conspiring to prevent or hamper his departure from the United States, and also advised him that, pursuant to INA § 241(a)(1)(C), failure to comply or provide sufficient evidence of his inability to comply may result in the extension of the removal period and subject him to further detention. *Id.*

On March 7, 2012, petitioner was served with a copy of a written decision (*id.* at 8-12) advising petitioner that, upon review of his custody status, DHS had determined to continue his detention "pending the outcome of your federal litigation and ultimately your removal from the United States." *Id.* at 11. This determination was based upon the totality of information available in petitioner's case file, including his extensive criminal history indicating that he would be a threat to the community and a flight risk if he were to be released from custody. *Id.*

Also on March 7, 2012, petitioner filed a motion with the BIA seeking to reopen his immigration removal proceedings, which was denied by the BIA on April 9, 2012. *Id.* at 25. On April 25, 2012, petitioner filed a second motion to reopen his immigration removal proceedings, which was denied by the BIA on June 13, 2012. *Id.* at 24.

On April 26, 2012, petitioner filed a second petition for review with the Second Circuit, this time seeking review of the BIA's order of April 9, 2012. *See id.* at 34-36 (Docket Sheet, *Haley v. Holder*, Dkt. No. 12-1706 (2d Cir.)). This petition for review was accompanied by a request for stay of removal. *Id.* at 35.

On May 16, 2012, the Second Circuit dismissed petitioner's initial petition for review, finding no "arguable basis in law or fact." *Id.* at 32. This order was issued as a mandate on July 23, 2012. *Id.* at 32-33. Petitioner's second petition for review and motion for stay of removal remain pending before the Second Circuit. *Id.* at 34-36.

DHS conducted further reviews of petitioner's custody status in June, September, and December 2012. Following each review, petitioner was notified that DHS determined to continue his detention in DHS custody. *Id.* at 2, 3, 5.

Petitioner filed this action on November 20, 2012, seeking habeas corpus relief pursuant to 28 U.S.C. § 2241 on the ground that his continued detention in DHS custody since December 9, 2011, when the Immigration Judge's order of removal became final, is unlawful since it has exceeded the "presumptively reasonable" six-month period established under the due process standards set forth by the United States Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001). Upon full consideration of the matters set forth in the submissions on file, and for the reasons that follow, the petition is denied.

## **DISCUSSION**

Petitioner challenges his continued detention by way of habeas corpus review under 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)); *see also Zadvydas*, 533 U.S. at 687 (petition under § 2241 is the basic method for statutory and constitutional challenges to detention following order of removal).

Matters pertaining to the detention of aliens pending the completion of immigration removal proceedings and pending removal following the entry of a final order of removal are governed by two separate provisions of the INA–respectively, INA § 236, which authorizes the arrest and detention of an alien on warrant pending a decision on whether the alien is to be removed from the United States, and INA § 241, which authorizes detention of aliens after the issuance of a final removal order. In this case, petitioner's detention at the time he filed his habeas petition was pursuant to INA § 241(a), which requires the Attorney General to accomplish an alien's removal from the United States within a period of ninety days (the "removal period"), commencing on the latest of the following dates:

> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Detention during the ninety-day removal period is mandatory. *See* INA § 241(a)(2) ("During the removal period, the Attorney General *shall* detain the alien."). The statute also authorizes the Attorney General to continue detention of certain criminal aliens–*i.e.*, aliens ordered removed due to conviction of an enumerated crime–beyond the expiration of the ninety-day removal period. *See* INA § 241(a)(6).[2]

---

[2]INA § 241(a)(6) provides in full as follows:

An alien ordered removed who is inadmissible under section 1182 of this title, removable

In *Zadvydas*, the Supreme Court was presented with the challenge of reconciling this apparent authorization of indefinite detention with the Fifth Amendment's prohibition against depriving a person of their liberty without due process. The Court determined that INA § 241(a) authorizes detention after entry of an administratively final order of deportation or removal for a period that is "reasonably necessary" to accomplish the alien's removal from the United States. *Zadvydas*, 533 U.S. at 699-700. Recognizing the practical necessity of setting a "presumptively reasonable" time within which to secure removal, the court adopted a period of six months "for the sake of uniform administration in the federal courts …." *Id.* at 701.

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*

To comply with the Supreme Court's ruling in *Zadvydas*, the Attorney General has promulgated regulations providing for review of the custody status of aliens who have been detained for more than six months after the issuance of a final order of removal. Under these regulations, a detainee who has been in post-removal-order custody for more than

---

under section 1227(a)(1)(C), 1227(a)(2),or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

six months may submit a written request for release to DHS Headquarters Post-order Detention Unit ("HQPDU") setting forth "the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future to the country to which the alien was ordered removed and there is no third country willing to accept the alien." 8 C.F.R. § 241.13(d)(1). The written request must include "information sufficient to establish his or her compliance with the obligation to effect his or her removal and to cooperate in the process of obtaining necessary travel documents." 8 C.F.R. § 241.13(d)(2).

In reviewing the request for release, the agency is required to consider "all the facts of the case including, but not limited to," the following:

> [T]he history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question. Where the Service is continuing its efforts to remove the alien, there is no presumptive period of time within which the alien's removal must be accomplished, but the prospects for the timeliness of removal must be reasonable under the circumstances.

8 C.F.R. § 241.13(f).

If the agency finds that the alien has met the burden of demonstrating good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, and that there are no special circumstances justifying continued detention, then it must order the detainee released. 8 C.F.R. § 241.13(g)(1). However, the agency may impose certain conditions of release on the alien, such as requiring a bond, attendance in a rehabilitative program, or submission to a medical or psychiatric examination. *See* 8

C.F.R. §§ 241.5(b), 241.13(h)(1); *see also Zadvydas*, 533 U.S. at 695 ("[W]e nowhere deny the right of Congress to remove aliens, to subject them to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions.").

As set forth above, in this case petitioner was received into DHS custody on August 4, 2010, upon his release from the Schenectady County Jail, for detention pending completion of immigration removal proceedings as authorized by INA § 236. *See* Item 6-1, ¶ 9. This detention continued until December 9, 2011, when the BIA dismissed petitioner's appeal of the IJ's order of removal. See 8 C.F.R. § 1241.1(b) (order of removal becomes final upon dismissal of appeal by the BIA).

After the order of removal became final on December 9, 2011, petitioner's detention was authorized by INA §§ 241(a)(1)(B)(i) and (2), and the removal period commenced. DHS promptly undertook efforts to secure a travel document for petitioner's removal to Guyana. However, on December 28, 2011, petitioner filed a petition for review in the Second Circuit challenging the final order of removal. Then, on April 26, 2012–while the initial petition for review was pending–petitioner filed a second petition for review accompanied by a motion for stay of removal.

Numerous decisions by the federal courts within the Second Circuit have held that the filing of a petition for circuit court review of the final order of removal, accompanied by a motion for stay of removal, triggers the application of a "forbearance policy" recognized by agreement between DHS and the Second Circuit under which DHS has agreed not to effectuate the removal of an alien while he or she has a petition for review pending before the circuit court. *See, e.g., Persaud v. Holder*, 2011 WL 5326465, at *1 (W.D.N.Y. Nov.

3, 2011) (filing of petition for circuit court review of final order of removal along with motion for stay of removal triggers "forbearance policy"); *Luna-Aponte v. Holder*, 743 F. Supp. 2d 189, 197 (W.D.N.Y. 2010) (even though circuit court had not "formally" ruled on motion to stay accompanying petition for review of BIA's dismissal of appeal from removal order, forbearance policy is "the equivalent of a court-ordered stay of removal"); *Shehnaz v. Ashcroft,* 2004 WL 2378371, at *2 (S.D.N.Y. Oct. 25, 2004) (where circuit court had not yet ruled on alien's requests to stay removal and for review of BIA's order, a stay of removal was in effect pursuant to Second Circuit forbearance policy); *cf. Abimbola v. Ridge*, 181 F. App'x 97, 99 (2d Cir. 2006) ("consistent pattern" of filing petition for circuit court review accompanied by motions to stay removal triggered application of Second Circuit's forbearance policy; petitioner's "self-inflicted wound should not establish grounds for [his] *Zadvydas* claim") (citing *Doherty v. Thornburgh*, 943 F.2d 204, 205 (2d Cir. 1991) (petitioner cannot rely on delays resulting from litigation strategy to claim that prolonged detention violates substantive due process).

Pursuant to this policy, the removal period which began on December 9, 2011, was "effectively stayed" as of December 28, 2011, when petitioner filed his petition for review with the Second Circuit. *Luna-Aponte*, 743 F. Supp. 2d at 190. Therefore, DHS had slightly more than two weeks to obtain the travel documents necessary for execution of the removal order prior to the filing of the petition for circuit court review (during which time petitioner's detention was mandatory, *see* INA § 241(a)(2)), and cannot resume its efforts until circuit court litigation is resolved.

Accordingly, because the detention challenged by the habeas petition in this action has been prolonged by petitioner's own pursuit of judicial review of the final order of removal, the duration of his detention cannot be found to constitute a violation of his rights under the due process clause of the Fifth Amendment. *Doherty*, 943 F.2d at 211 (refusing to find eight-year detention unconstitutional where alien's pursuit of judicial and administrative review caused the delay in removal); *Dor v. District Director, INS*, 891 F.2d 997, 1002 (2d Cir. 1989) (same, but with four year detention); *see also Khaleque v. Department of Homeland Sec.*, 2009 WL 81318, at *3 (W.D.N.Y. Jan. 9, 2009) (denying alien's habeas petition upon finding that alien "elected to file a petition for review and a motion for a stay of removal" which "acted to prevent his removal until the Second Circuit issued its mandate").

Furthermore, considering petitioner's habeas challenge under the due process standards set forth in *Zadvydas*, petitioner must first "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Only if he makes this initial showing does the burden shift back to the government, which "must respond with evidence sufficient to rebut that showing." *Id.*; *see also Wang*, 320 F.3d at 146 ("reasonable foreseeability" test of *Zadvydas* "articulates the outer bounds of the Government's ability to detain aliens (other than those serving criminal sentences) without jeopardizing their due process rights").

Upon review of the submissions on the present petition, the court finds that petitioner has failed to sustain his initial burden under *Zadvydas*. The petition sets forth no factual basis to substantiate petitioner's belief that there is no significant likelihood he

can be removed to Guyana in the reasonably foreseeable future. He simply alleges that the Embassy "has not issued any travel documents and there is no certainty as to when, if ever, such papers will be issued." Item 1, ¶ 15. However, as discussed above, the request for a travel document for petitioner remains pending with the Embassy, and there is nothing in the record before the court to indicate that Guyanan authorities are inclined to deny the request upon resolution of petitioner's litigation in the Second Circuit.

In addition, the available statistical evidence reveals that in recent years, DHS has successfully repatriated significant numbers of aliens to Guyana, indicating no institutional barriers to petitioner's removal. For example, DHS reports show that in fiscal year ("FY") 2009, a total of 305 aliens were repatriated to Guyana; in FY 2010, 221 aliens were repatriated to Guyana; and in FY 2011, 189 aliens were repatriated to Guyana. *See* DHS Yearbook of Immigration Statistics: 2011, Table 41: http://www.dhs.gov/yearbook-immigration-statistics-2011-3. These circumstances provide a reasonable basis for DHS's expectation that the verification required for the issuance of a travel document by the Guyanan government can be accomplished within the reasonably foreseeable future following resolution of petitioner's pending request for review by the Second Circuit, after which time the necessary travel arrangements may be made for petitioner's release from custody and his repatriation to Guyana.

Significantly, petitioner has provided no evidence to contradict this expectation, or to otherwise establish compliance with the requirements of the DHS regulations described above. Instead, petitioner relies solely on the fact that his detention has exceeded the presumptively reasonable six-month period established in *Zadvydas*. *See* Item 1, ¶¶ 15, 31. However, several cases decided within this district have found the habeas petitioner's

assertion as to the unforeseeability of removal, supported only by the mere passage of time, insufficient to meet the petitioner's initial burden to demonstrate no significant likelihood of removal under the Supreme Court's holding in *Zadvydas*.  *See, e.g., Khaleque*, 2009 WL 81318, at *4 (petitioner failed to meet initial burden where the only evidence relied upon was the fact that the Consulate had not responded positively to the request for a travel document); *Kassama v. Dep't of Homeland Sec.*, 553 F. Supp. 2d 301, 306-07 (W.D.N.Y. 2008) (petitioner failed to meet initial burden where there was no evidentiary proof in admissible form to suggest that travel documents would not be issued); *Haidara v. Mule*, 2008 WL 2483281, at *3 (W.D.N.Y. June 17, 2008) (petitioner failed to meet initial burden where he "merely ma[de] the general assertion that he will not be returned to [his country] in the foreseeable future"); *Roberts v. Bureau of Immigration & Customs Enforcement*, 2007 WL 781925, at *2 (W.D.N.Y. Mar. 13, 2007) (petitioner who did not present evidence that his country would not provide travel documents did not meet initial burden of proof.); *Singh v. Holmes*, 2004 WL 2280366, at *5 (W.D.N.Y. Oct. 8, 2004) (petitioner who "failed to submit anything demonstrating that there is no significant likelihood of removal in the reasonably foreseeable future" did not meet initial burden of proof); *see also Juma v. Mukasey*, 2009 WL 2191247, at *3 (S.D.N.Y. July 23, 2009) (vague, conclusory and general claims that removal is not foreseeable, and that Embassy will not issue travel document in foreseeable future, fails to meet initial burden).

Based on this authority, and upon full consideration of the record presented by way of the parties' submissions, the court finds that petitioner has failed to meet his initial burden under *Zadvydas* to "provide[ ] good reason to believe that there is no significant

likelihood of removal in the reasonably foreseeable future," *Zadvydas*, 533 U.S. at 701, and that petitioner may not rely on the delay resulting from his request for circuit court review of the final order of removal to claim that his prolonged detention violates substantive due process. Accordingly, petitioner has failed to demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States" for the purposes of granting habeas corpus relief under 28 U.S.C. § 2241, and his petition must be denied.

## CONCLUSION

For the foregoing reasons, the petition is denied, and the case is dismissed. This dismissal is without prejudice to file another petition should it subsequently appear that the presumptively reasonable period of post-removal-order detention has elapsed, and that removal is no longer reasonably foreseeable. *See Andreenko v. Holder*, 2012 WL 4210286, at *5 (W.D.N.Y. Sept. 18, 2012); *Kassama*, 553 F. Supp. 2d at 307.

It is further ordered that certification pursuant to 28 U.S.C. § 1915(a)(3) be entered stating that any appeal from this Judgment would not be taken in good faith and therefore leave to appeal as a poor person should be denied. *Coppedge v. United States*, 369 U.S. 438 (1962).

The Clerk of the Court is directed to enter judgment in favor of respondent, and to close the case.

So ordered.

                              \s\ John T. Curtin
                                JOHN T. CURTIN
                       United States District Judge

Dated: May 8, 2013
p:\pending\2012\12-1148.2241.may2.2013